OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Robert Hand, Jr., filed March 30, 2007. On December 20, 2006, Hand was indicted by a Montgomery County Grand Jury on one count of aggravated robbery, in violation of R.C. 2911.01(A)(1), with a firearm *Page 2 
specification. On December 26, 2006, Hand entered a plea of not guilty, and on January 17, 2007, he filed a Motion to Suppress Identification. Hand subpoenaed the victim herein, Kendrick Collins, who identified Hand from a photo array of suspects.
 {¶ 2} Collins failed to appear at the hearing on the motion to suppress, and counsel for Hand stated, "we would ask for the Court's assistance in having him be present in order to assist the defense." The State argued that it was unclear whether or not Collins had been personally served. The State further argued, "the defense would have to make a showing that there was an impermissibly suggestive photo array shown to the victim before they could then delve into the reliability of the ID given by the victim. And since I don't believe that will occur at this point in time, * * * the State objects to them calling the victim in this matter to delve into that issue at this time." Counsel for Hand responded that the defense "simply wish to ask Mr. Collins * * * whether or not the detective in any manner pointed to a particular photograph, folded the paper in any particular way, dropped his pen on any particular photograph, those simple questions as opposed to going on any fishing expeditions."
 {¶ 3} The court responded that it "is of the opinion that those are issues that can be resolved at trial. I don't know if those issues are appropriate for suppression, and that's what the Court will decide on once you submit some authority that you are allowed to do that. The Court is going to reserve judgment as to whether or not you can proceed in that fashion. The Court's initial reaction is that's a matter for trial. I don't think that's a matter for suppression, but I am reserving that until I see your authority as to whether or not we'll allow you to proceed in that fashion."
 {¶ 4} The State then called Detective Mark Bilinski of the Dayton Police Department *Page 3 
to the stand. Bilinski, who presented the photo array at issue to Collins, testified as to the procedures he used in assembling the array and the identification process that resulted in Collins identifying Hand as the perpetrator of the robbery. State's Exhibit 1, the photo array that Bilinski showed to Collins, was admitted into evidence. On direct examination, Bilinski stated, Collins "had almost no hesitation and he said number three [Hand] is the guy." Following cross-examination, the court ruled as follows: "up to this point the Court is satisfied that based on testimony at this point in time, that based on State's Exhibit 1, the plaintiff looked at that and the procedure that occurred does not find that there's been any unduly suggestive nature in this lineup at this point in time.
 {¶ 5} "Now if the defendant has some evidence from the victim or if you talked with the victim and the victim has indicated that the police department, in fact, did something other, the Court will entertain further proceedings.
 {¶ 6} "But at this point in time the Court is satisfied that the Motion to Suppress is going to be denied because there's nothing to suggest that there was anything suggestive in the lineup. That's not to say that the Court won't revisit this issue if you can give to this Court some authority that you can bring the victim to testify at this type of proceeding. And if that's the case, then we will schedule this matter for further proceedings.
 {¶ 7} "But based upon the evidence that the Court has right now, * * * the Court will deny the motion but will reopen it if you can submit to the Court authority for your position."
 {¶ 8} Counsel for Hand then requested "an opportunity to brief that," arguing "it' s my client's right to go into the fact based on the testimony that Detective Bilinski said * * * there was almost no hesitation. * * * I think I can delve into that to determine what hesitation there *Page 4 
was and why there was a hesitation."
 {¶ 9} The trial court then gave the parties 14 days to submit memoranda regarding whether or not the hearing on the motion to suppress should be "reopened."
 {¶ 10} In his Memorandum, Hand argued that a witness who has been lawfully served with a subpoena and fails to appear is in contempt of court, pursuant to R.C. 2705.02. Hand further argued that a trial court abuses its discretion when it denies a defendant's request to call a witness to testify at a suppression hearing where the defendant contends that a photographic identification procedure was unduly suggestive, in reliance upon State v. Rivera, Montgomery App. No. 18845, 2002-Ohio-283 (finding an abuse of discretion where the trial court denied defendant's request to call eyewitnesses to testify at the suppression hearing regarding an identification procedure, since they would have been the "best witnesses on that issue, and they would not have shared the bias of the police officer," but concluding error was harmless where both eyewitnesses testified at trial, and were extensively examined, regarding the photographic identification procedure).
 {¶ 11} In its memorandum contra, the State relied upon Neil v.Biggers (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401.Biggers involved a habeas corpus proceeding by a state prisoner. The district court granted the writ, the state appealed, the court of appeals affirmed, and the Supreme Court granted certiorari. The Supreme Court set forth the factors to be weighed in assessing the likelihood of misidentification, namely "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." The Court *Page 5 
determined that the victim's out-of-court identification of the defendant rapist was admissible even though the station house showup may have been suggestive, since a substantial likelihood of misidentification did not exist, given that the victim spent up to 30 minutes with her assailant under adequate light, and her description of him to police was "more than ordinarily thorough," and she had "no doubt" that he was the person who raped her. The State argued that Hand "must show that an out of court identification was unnecessarily suggestive before being permitted to question the witness as to the identification[']s reliability and since the Defendant has failed to show that the out of court identification of defendant was unnecessarily suggestive, the Defendant may not be permitted to question the witness."
 {¶ 12} In its March 2, 2007, journal entry denying Hand's motion to suppress, the court found Biggers "to be dispositive of the issue herein." According to the trial court, "it is the Defendant's burden to prove that the procedures were so suggestive and unnecessary and the testimony will be unreliable under the totality of the circumstances test as set forth in Neil v. Biggers. In the case at bar, the Court finds that the Defendant has failed to satisfy the first part of that burden. Specifically, the Court finds that the Defendant has failed to satisfy that the procedures used were unnecessarily suggestive. At the Hearing of this cause, Detective Bilinski of the Dayton Police Department testified about the photo spread containing the Defendant's photograph that he showed to the witness, Kendrick Collins. The Court finds the testimony to be credible and as the operative facts considered by this Court."
 {¶ 13} The trial court's decision did not address Appellant's request for the court to assist in securing the presence of Collins.
 {¶ 14} Hand entered a plea of no contest, and the trial court sentenced him to a term of *Page 6 
four years.
 {¶ 15} Hand asserts one assignment of error as follows:
 {¶ 16} "THE TRIAL COURT VIOLATED THE DEFENDANT'S CONSTITUTIONAL RIGHT TO COMPULSORY PROCESS AND ASSISTANCE AT A CRITICAL STAGE OF THE PROCEEDING BY NOT ASSISTING IN COMPELLING THE ATTENDANCE OF A WITNESS AT A HEARING THAT WAS LAWFULLY SERVED."
 {¶ 17} According to Hand, again relying on Rivera, "the Defendant's subpoena power is basically usurped as the Court will not assist to compel the witness's presence and the Court does not provide equal protection for enforcing a subpoena." The State responds, "because the manner or mode of the presentation did not suggest that Hand was more likely than any other to be the perpetrator, there was no likelihood of misidentification. Additionally, when given the opportunity to suggest how the photo-lineup was suggestive Hand was unable to state how it was. As such, Hand's right to compulsory process was not violated and the trial court did not commit error by overruling Hand's motion to suppress."
 {¶ 18} "The Sixth Amendment to the United States Constitution, and Section 10, Article I of the Ohio Constitution, guarantees [sic] a criminal defendant the right to present witnesses in his or her behalf and to use the power of the court to compel the attendance of those witnesses, if necessary. This right is a fundamental element of due process of law, and in plain terms is the right to present a defense." (Internal citation omitted). State v. Brock, Montgomery App. No. 19291, 2002-Ohio-7292 (finding no abuse of discretion where the trial court refused to compel the attendance of a subpoenaed defense witness in the middle of trial since doing so "is an inefficient and undesirable way to administer justice," where it "is sheer speculation as to how *Page 7 
long it might take to locate the missing, recalcitrant witness, be it a few hours, a few days or even longer").
 {¶ 19} "Service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person * * * or by leaving it as his usual place of residence * * *." Cr. Rule 17(D). "When a subpoena is left at a witness' usual place of residence, * * * and the witness has actual knowledge of the subpoena, service of summons has been completed." Brock. A person who fails to "obey a subpoena duly served" is in contempt of court. R.C. 2705.02. "When a witness * * * fails to obey a subpoena personally served, the court * * * may issue to the sheriff * * * a writ of attachment, commanding him to arrest and bring the person named in the writ before such court or officer at the time and place the writ fixes, to give his testimony and answer for the contempt. * * * When the witness was not personally served, the court, by a rule, may order him to show cause why such writ should not issue against him." R.C. 2317.21(emphasis added); See, State v. Wilcox (June 11, 1992), Cuyahoga App. Nos. 60851, 60886 ("In order to obtain the issuance of a writ of attachment from the court in order to secure the attendance of an absent witness, it is necessary for the disobeying witness to have been personally served with a prior subpoena. R.C.2317.21. Accordingly, the court did not abuse its discretion in refusing to issue writs of attachment where the defense failed to obtain personal service on their subpoenas. Any action to defeat defendant's right of compulsory process was not of the government's making")
 {¶ 20} We initially note that Hand's reliance upon Rivera is misplaced; at issue therein was not an alleged denial of the right to compulsory process, as here, but rather the trial court's "misimpression that the eyewitnesses testimony would only be relevant to the issue of whether *Page 8 
their identification was otherwise reliable, in the event that the photographic identification procedure was found to be unduly suggestive."[1]
 {¶ 21} Having reviewed the record herein, we note that Collins' subpoena was served by residential service only, on January 24, 2007, a week before the hearing on the motion to suppress. At the hearing, Hand could have requested a reasonable continuance of the proceedings so that he could effectuate personal service upon Collins. Hand failed to do so. In fact, counsel for Hand indicated at the suppression hearing that he was unsure of the manner in which Collins had been served, and he did not argue that Collins had actual knowledge of the subpoena.
 {¶ 22} The trial court did not err in failing to assist Hand in securing Collins' appearance where personal service had not been obtained. Hand's right to compulsory process was not violated. Although counsel could have requested a reasonable continuance to obtain personal service, no such request was made. There being no abuse of discretion, the judgment of the trial court overruling Hand's motion to suppress is affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Mark J. Keller
William T. Daly
Hon. Michael L.Tucker
[1] We note that the visiting judge herein appears to share theRivera court's "misimpression" that eyewitness testimony would only be relevant to the issue of reliability. *Page 1